Peck, J.,
delived the opinion of the Court.
The Merchants’ Exchange Company of Baltimore represents, by its petition, that on the 2d of February, 1856, an agreement was made by the president of that company and an agent of the United States, which hound the company, in consideration of the sum of $267,000, to convey to the United States the property known as the Merchants’ Exchange building, and the ground on which it stood, in the city of Baltimore, “ free from all incumbrance, according to the draught of a deed annexed to said agreement;” but said deed was not to be executed “until permission to hold the property was granted to the United States by the legislature of the State of Maryland, and the Congress of the United States approved of the agreement by making the necessary appropriation to carry the same into effect;” which agreement is referred to and made part of the petition.
*333 That the State of Maryland gave the required permission, and Congress did make the required appropriation by act approved August 18, 1S56; and the said deed was duly executed August 23, 1856, which act and deed are made exhibits and a part of the petition.
That on the 6th of September, 1856, the title tendered to the United States by the said Merchants’ Exchange Company of Baltimore was adversely passed upon by the Attorney General of the United States; whereas, subsequently, on the 19th of May, 1857, the same officer pronounced the title perfectly good and sufficient in law, and as such it was accepted by the government of the United States ; all of which appears by reference to the opinions of Attorneys General Cushing and Black, also made a part of the petition as exhibits.
That in consequence of the opinion of the Attorneys General of September 6, 1856, no part of the purchase-money which became due according to the agreement, when the appropriation was made and the deed tendered, was paid until on the 27th of May, 1857, when #7,000 was paid, and on the 1st of June following, when #200,000 was paid. That immediately after the appropriation was made, the petitioner “ began to notify its tenants to vacate,” and held the property in readiness for delivery to the United States according to the terms of the contract. That in the mean time the petitioner had not either the rents or the use of the money. Therefore it is claimed that the United States is liable and bound to reimburse the petitioner for all the loss and damage sustained by the violation of the contract, and the refusal to pay the purchase-money for the space of nine months after the same became due ; which loss and damage are stated in two items, viz: taxes from August 18, 1856, to June 1, 1857, #751 78; loss of rents, #9,664 04. To this petition the solicitors have demurred, and assign the following grounds :
1st. The petition shows that the claimants contracted to sell and convey the property mentioned and described therein to the United States, “ free of all incumbrance,” and that when they offered to convey the same to the United States it was not free of incumbrance, but being incumbered to the amount of more than seventy thousand dollars, the United States refused to accept it and complete the contract.
2d. That the petition does not show that the claimants had a good title or any title at all to the property which the United States contracted to purchase at the time the claimants demanded that the United States should accept and pay for the property.
3d. Because the United States were not bound, under the contract of purchase, to accept or pay for said property until the claimants *334 could give them a title to it free of all incumbrance, and the United States are not liable for any taxes the claimants may have paid or rents they may have lost by dispossessing their tenants during the time they were engaged in perfecting their title and rendering it free of incumbrance.
4th. Because, under the law authorizing the purchase of the property described in the petition, it was provided that no money should be paid thereon until the title of the claimants thereto should be examined and approved by the Attorney General of the United States ; and the petition shows that the title of the claimants to said property was not approved by the Attorney General, to whom it was submitted in August, 1856.
5th. Because said petition is otherwise informal, uncertain, and insufficient.
The demurrer, we think, is well taken. The petition is deficient in averment; all pleadings are to be most strongly construed against the pleader, who is always supposed to state his case as favorably for himself as the facts and circumstances will justify. The third clause, which is the gist of the petition, does not show, nor does it anywhere appear in the petition, that the title to the premises to be conveyed was ever in the claimant; nor does it appear, except inferentially, that any deed was ever tendered. By way of narrative, it is recited that the “title tendered” on the 6th of September, 1856, was adversely passed upon by the Attorney General, and this is the sole averment in that relation. Whether it was the title the claimant contracted to furnish, or a title emanating from some other party, does not appear; it may have been offered by the claimant, although derived from some other source. Nor is it averred that it was in form or substance the conveyance referred to in the agreement. It is then averred that “ the title was subsequently, on the 19th of May, 1857, by the same officer, pronounced perfectly good and sufficient in law, and was accepted,” &c. Was the same or another title presented for acceptance ? This averment is open to a double interpretation, while it was the duty of the pleader to present his case free of ambiguity and with precision. Until the law officer of the government should approve the title, no sale could he made; nor until then could any cause of action arise for refusal to accept. The conveyance was made to depend upon an approval of the title by this officer, and until- he should become satisfied as to its completeness we do not see how, in any event, an action could be maintained against the United States for any injury resulting *335 from Ms delay to approve the title, which it is not alleged they induced. This was the obligation of the agreement, and neither party has a right to complain of conditions imposed by consent of both. That officer was not restricted, but was authorized to take as much time for deliberation or investigation as he deemed proper. He was not any more the agent of one party than the ether, so far as this agreement is concerned, but was the arbiter for both.
If the law officer rejected a title in September, 1856, and accepted one in May, 1857, no averment to the contrary appearing, the presumption is either that the titles were different, or if one was twice presented, the objections to it, which existed at the first presentation, were subsequently removed.
The averment to authorize a recovery for loss of rents is, that immediately after the appropriation was made the claimant “ began to notify its tenants to vacate, and held the property in readiness to deliver to the United States, according to the terms of the contract.” This is very vague and indefinite. It maybe asked : Did they continue to notify the tenants 1 Did the tenants vacate ? The petition does not answer either question. To recover for'loss of rents, it should be averred that the tenants did vacate. Ho damages would result,.as a matter of course, because of a beginning to give notices to quit. Such notices were not required by the government, and unless there was some assurance that the title would be accepted, the claimant gave such notices in his own wrong.
The appropriation was made to depend upon circumstances wholly independent of the agreement referred to in the petition, and until the selection of the property described in the agreement as a site for a post office, in the manner directed by the law, any steps to vacate the building were taken by the claimants prematurely, and they must abide the consequences.
The act making an appropriation to procure and pay for a site for a post office in the city of Baltimore, which is the foundation of the petition and made a part of it, as Exhibit B, does not “ approve” the agreement marked Exhibit A. ’ It simply authorizes the President to “reconsider” some conditional contract theretofore made by him with the Merchants’ Exchange Company. The agreement A was made with Captain A. H. Bowman, acting for the United States. Without some explanation, it is not perceived what connection there is between the act and the agreement.
Under the act, commissioners were to be appointed to select a site; if their selection should be approved, the money was to be expended; *336 if not approved, the whole subject was to he again referred to Congress. We do not discover in the act, to which we are referred, any such approval of the agreement as the claimant assumes; on the contrary, the inference is that the site remained unselected and undetermined.
Mr. Oehdschdager for the claimants.
Mr. J. J. Weed, the Assistant Solicitor, for the government.
The demurrer is sustained, and the petition will he dismissed.